## JIM WILEY v. STATE.

No. A-2394.    Opinion Filed December 4, 1916.

(161 Pac. 61.)

**HOMICIDE—Trial—Instructions—Self-Defense.** Where the only eye-witness to a homicide testified that the deceased attempted to bribe the accused to swear falsely, and the accused resented the offer by using very violent and insulting language toward the deceased, and that the deceased thereupon became enraged and attacked the accused with an open knife, and the accused then shot the deceased in defense of his person, and where the evidence showed no previous hostility, but, on the contrary, that prior to the fatal difficulty the men had been friends, held, that it was prejudicial error for the court to instruct the jury, under this state of facts, to the effect that, if the accused addressed the insulting language towards the deceased for the purpose of provoking a difficulty, and doing the deceased bodily harm, he thereby forfeited his right of self-defense, for the reason that the accused had the right to resent this offer to bribe him, and to resent it in no uncertain language, and this instruction suggests a purpose on the part of the accused for using the insulting language which is neither suggested by nor borne out by the evidence, and in effect denies to the accused the plea and right of self-defense which the evidence on behalf of the accused tended to establish.

*Error from District Court, Pontotoc County;*
*Tom D. McKeown, Judge.*

Jim Wiley was convicted of manslaughter in the first degree, and brings error. Reversed and remanded.

*Crawford & Bolen* and *W. N. Maben,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

BRETT, J. Plaintiff in error in this case, who will be referred to as defendant, was charged with murder in the district court of Pontotoc county, and was con-

victed of manslaughter in the first degree, and sentenced to 12 years in the penitentiary.

There was no one present at the time of the fatal difficulty except the defendant and the deceased. The defendant's plea was self-defense; and in this he is not contradicted by the circumstances, and the state failed to show any hostility between the men prior to the difficulty which resulted in the homicide. In fact, the widow of the deceased testified that they were friends, and she knew of no differences between them.

The defendant was a tenant on the farm of the deceased, and had, only a short while before the homicide, made a deal with the deceased to cultivate the farm for another year. But a few days prior to the homicide defendant found a notice on his front gate warning him to settle up his affairs and leave the community within ten days. Defendant testifies: That, feeling unsafe, because of this notice, he borrowed a Winchester rifle from the deceased, and also purchased a pistol, to defend himself against any violence that might be offered by the party or parties who were the authors of this unfriendly and threatening notice. That he kept the Winchester at the house, but carried the pistol with him wherever he went. That he had consulted with the deceased as to how he should treat the warning, and had decided to forfeit the contract for another year and leave the community. The deceased had made him an offer to buy his crop, but he thought the consideration was not enough and did not accept it. His oats had been threshed, and after defendant determined to leave he sold the oats to the merchant who had furnished him with groceries during the past year in settlement of what he owed said

merchant. That on the day of the homicide deceased came to his house and told him he wanted to talk to him privately, and suggested that they withdraw to a private spot near the house. That when they reached this place the deceased told him that a lady by the name of Hammersley had gone to Ada that day, and filed a suit against him for slander, and said to the defendant, "I need your help," to which the defendant replied, "All right," and asked deceased, "What do you want me to do?" Deceased replied, "I want you to swear that I have always spoken of that woman in the highest terms to you." Defendant replied that he could not do that. Deceased said, "Wiley, if you will, I will make you a different man." Defendant asked him what he meant by that, to which the deceased replied, "I will give you $50 if you swear that." Defendant testified: That he became angry at this attempt to bribe him to swear falsely, and resented it by using some very violent and abusive language toward the deceased, which we will not here repeat. That deceased became furious and began to shake with rage, and called the defendant some vile names, and struck at him overhanded with a knife. That he, the defendant, jumped back and drew his pistol and began to shoot, and shot as rapidly as he could, until he emptied his revolver. That deceased made two lunges at him with the knife after he began shooting; that about the time he fired the last shot deceased staggered backward and fell. That he, the defendant, then turned and went to the house, and summoned the neighbors, and went to the nearest peace officer and surrendered.

There was, at the time the neighbors first saw the defendant and at the time he surrendered, a cut place on the shoulder and arm of his jumper. The deceased was

left-handed, and near his left hand was an open knife, which his widow identified as the knife of her husband, and one of the state's witnesses, who lived only about 250 yards from the scene of the homicide, and was one of the first to arrive upon the ground, stated there were signs on the ground that indicated that there had been a tussle. Witnesses for the state testified that the shots were fired in very rapid succession. The records of the district court show that the lady, Hammersley, had on the very day of the homicide commenced an action against the deceased for slander. Dobson and other witnesses for the state say that the defendant told them immediately after the killing that he and the deceased had a difficulty which grew out of the Hammersley case, and he killed deceased to prevent his cutting him with a knife, which is a circumstance which corroborates the defendant's story; for it is hardly probable that he would have known anything about the Hammersley case having been commenced if he had not been told about it by the deceased, since the lady had gone to Ada and filed the case that very day. For while it is reasonable, under the facts disclosed by the evidence, to suppose that the deceased was expecting this action to be filed, and consequently watching every movement of this woman, yet there is nothing in the evidence to indicate that the defendant had any interest in the matter, or would have known of the action being commenced, unless told about it by the deceased. There is considerable vague evidence on the behalf of the state which might have been, under the explanation of counsel, of value to the jury, but which on the cold face of the record throws but little, if any, light upon the motive or the circumstances of this homicide.

The defendant complains, among other things, of some instructions given by the court; the first complained of being No. 6. While we think, under the facts in this case, this instruction is both erroneous and prejudicial, yet no exception was taken to it, nor did the defendant call the court's attention to the error by offering a correct instruction. Hence we cannot consider the error complained of.

But instruction No. 13 was duly excepted to, and we think, under the facts in this case, was erroneous, and highly prejudicial to the substantial rights of the defendant. In this instruction the court tells the jury:

"That insulting words are not sufficient in law to justify an assault, but if a person address insulting words to another with a purpose and intent to provoke a difficulty, and with the intent to kill, or to do serious bodily injury to the person insulted, then he cannot plead the law of self-defense, unless he voluntarily abandons the combat prior to the killing, and by words or acts notify his adversary of his intention to withdraw therefrom. So in this case, if you believe from the evidence beyond a reasonable doubt that the defendant, Jim Wiley, addressed insulting words to the deceased, J. N. Ross, with the intent and purpose to provoke said J. N. Ross into a fight and cause the said J. N. Ross to make an unlawful assault upon him, with the intent and purpose of the said Jim Wiley to kill said J. N. Ross or to do him serious bodily injury, then the defendant, Jim Wiley, cannot invoke the right of self-defense."

Under the evidence in this case, the insulting language used by the defendant towards the deceased was in resentment of the offer of the deceased to bribe the defendant to swear falsely. Prior to this time the evidence shows that they had been friends. The deceased came

to the defendant as a friend, to get him to assist him in this slander suit; and the defendant indicated his willingness to render whatever assistance he could. But, when deceased revealed the fact that his mission and purpose was to induce the defendant to swear falsely, it was both the right and the duty of the defendant to resent his offer, and to resent it in no uncertain language. And under this state of facts it was highly prejudicial to the rights of the defendant to inject the implication contained in this instruction that the defendant might have addressed the insulting words toward the deceased for the purpose of provoking a difficulty with the intent to kill the deceased or do him serious bodily injury. The doctrine announced in this instruction as an abstract proposition of law is correct, and under certain conditions would be a proper instruction, but has no application to the facts in this case and suggests a purpose on the part of the defendant for using this insulting language towards the deceased which is not suggested anywhere by the evidence. And this unwarranted suggestion and instruction in effect denies to the defendant the plea and right of self-defense, which his evidence tended to establish, and entitles him to a new trial.

There are some other matters complained of which, if error, will not likely recur in a retrial of the case; and, as the judgment must be reversed by reason of the error contained in this instruction, we deem it unnecessary to pursue the matter further.

The judgment is reversed, and the cause remanded.

DOYLE, P. J., and ARMSTRONG, J., concur.